STATE BANK OF SYRACUSE, Respondent, *v.* JOHN A. LIGHTHALL, Individually and as Trustee, and Others, Appellants, Impleaded with Others.

*Parol evidence, competent to elucidate the language and intent of parties in executing a mortgage.*

In an action to foreclose a mortgage, given to a bank to secure payment of a sum which one of the mortgagors had agreed to pay into the bank to the credit of a corporation, parol evidence of the circumstances under which the mortgage was given and of the relations between the parties is competent to elucidate the language of the mortgage, and the intent of the mortgagors in delivering it, but not to contradict or vary its terms and conditions.

APPEAL by the defendants, John A. Lighthall, individually and as trustee, and others, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Onondaga on the 17th day of January, 1899, upon the report of a referee.

Plaintiff brings this action to foreclose a mortgage bearing date the 26th day of February, 1896, recorded in the Onondaga county clerk's office on the 18th day of December, 1896 in book 326 of Mortgages at page 285.

An answer was served by John A. Lighthall, William S. Lighthall, Frederick S. Lighthall and Zayde E. Lighthall in which they admit that on or about the 26th of February, 1896, "they executed, acknowledged and delivered to the plaintiff a mortgage, whereby they granted to the plaintiff the premises described in the complaint, containing the conditions therein specified. * * * They deny that the said mortgage was executed for the purpose of securing to the plaintiff the sum of $5,000 or any other sum whatever." They allege that the mortgage has been fully paid by the said defendants, and that all the conditions therein contained have been, prior to the commencement of this action, fully kept and performed by them. "They allege that the said mortgage was executed without consideration on the part of the defendants, or, either of them, to the knowledge of the plaintiff." Their answer contains some other allegations.

The issues framed by such answer were referred to a referee, who passed upon the issues favorably to the plaintiff, and he found as conclusions of law :

" *First.* That there was due and unpaid on said mortgage at the time of the commencement of this action the sum of $5,000, with interest thereon from June 1, 1896.

" *Second.* That the plaintiff is entitled to the usual judgment of foreclosure of said mortgage and the sale of said mortgaged premises, the proceeds of such sale to be applied towards the payment of the debt of the Farmers' Fertilizer Company to plaintiff."

The appellants served and filed several exceptions to the referee's findings of fact and to his conclusions of law.

*W. S. Andrews,* for the appellants.

*Frank Hiscock,* for the respondent.

HARDIN, P. J. :

Plaintiff's complaint alleges that it received the mortgage mentioned in the complaint. The mortgage bears date the 26th day of February, 1896. It was acknowledged by Frederick S. Lighthall and Zayde E. Lighthall on the 28th day of February, 1896, in the State of New Jersey, and on the 2d day of March, 1896, it was acknowledged by John A. Lighthall and William S. Lighthall before a commissioner of deeds in the city of Syracuse.

The following words are found in the first part of the mortgage, to wit :

" This indenture, made this twenty-sixth day of February, in the year of our Lord one thousand eight hundred and ninety-six, between John A. Lighthall, John A. Lighthall, Jr., Zayde E. T. Lighthall, Frederick S. Lighthall, William S. Lighthall and John A. Lighthall, as trustee for John A. Lighthall, Jr., Zayde E. T. Lighthall, Frederick S. Lighthall and William S. Lighthall, of Syracuse, N. Y., parties of the first part, and State Bank of Syracuse, a body corporate, party of the second part :

" *Witnesseth,* that the said parties of the first part, in consideration of the sum of one dollar, have sold, and by these presents do grant and convey to the said party of the second part, its successors and assigns, all that tract or parcel of land situate in the city

of Syracuse, N. Y." Then follows a description of the premises as stated in the complaint. Following the description is found the following language :

"The said John A. Lighthall, one of the parties of the first part, having agreed to pay into the State Bank of Syracuse, the party of the second part, to the credit of the Farmers' Fertilizer Company, the sum of five thousand dollars on or before the first day of June, 1896.

·" This grant is intended as security for the payment of the sum of five thousand dollars by said John A. Lighthall at the time and in the manner aforesaid. And this conveyance shall be void if such payment be made as herein specified. And in case default shall be made in the payment of the said sum, or any part of said sum, as above provided, it shall be lawful for the party of the second part, its successors or assigns, at any time thereafter, to sell the premises hereby granted, or any part thereof, in the manner prescribed by law, and out of all the moneys arising from such sale to retain the said amount which is to be placed to the credit of the Farmers' Fertilizer Company in the State Bank of Syracuse whenever received, together with the costs and charges of making such sale, and the overplus, if any there be, shall be paid by the party making such sale on demand to the said John A. Lighthall, as trustee, as aforesaid, his successor or assigns."

Upon the trial considerable evidence was received tending to elucidate the situation of the respective parties and their relations to each other at the time the mortgage was delivered to the plaintiff. From that evidence it appeared that the plaintiff is a domestic corporation doing business at Syracuse as a bank of discount. It also appeared that the Farmers' Fertilizer Company was a domestic corporation organized and doing business at Syracuse, and, prior to the date of the said mortgage and subsequent thereto, it was a large customer of the bank, transacting, apparently, all its banking business with the plaintiff. In the course of that business the Farmers' Fertilizer Company had become a borrower of some $17,000 on accommodation paper and had induced the bank to carry some $33,000 of customers' paper, which two classes of paper the bank held at the time the mortgage was executed. The affairs of the Farmers' Fertilizer Company had become somewhat impaired

and its business extended and its credit somewhat questioned by the bank, and several interviews were had antecedent to the execution of the mortgage between the officers of the bank and the officers of the Farmers' Fertilizer Company with respect to the relations of the two corporations to each other. In speaking of such interviews Mr. Hendricks testifies : " There was some anxiety at that time among the officers of the bank in relation to the security that we had, which led to some negotiations with them in relation to other securities. Mr. John A. Lighthall finally agreed to give us this mortgage, with the understanding that it should be paid to reduce their indebtedness that much."

John A. Lighthall, who was called as a witness for the defendants, and who was president of the Farmers' Fertilizer Company, testifies that he had an interview in regard to the mortgage and that he volunteered to give the mortgage on the house where he resided, and in speaking of one of his interviews with the bank, or its officers, he testifies : " My impression is that it was with Mr. Chase, the cashier. I drew up that mortgage with the understanding * * * that it should not go on record until such time as the officers of the bank thought it necessary. The mortgage was accepted by Mr. Chase and put away as collateral security."

Further evidence was given tending to elucidate the real relations between the parties at the time the mortgage was actually delivered. When the evidence which we have quoted, and the other evidence to which we have referred was received, the referee expressly held that it was not received for the purpose of contradicting or varying the terms of the mortgage, and held that it was competent with a view of elucidating the language used in the mortgage and to aid in ascertaining the intention of the parties to the mortgage in delivering the same to the plaintiff. For such purpose we think the evidence was competent.

In *French* v. *Carhart* (1 N. Y. 96) it was held that in the construction of instruments, " the intention of the parties is to govern ; and where the language used is susceptible of more than one interpretation, courts will look at the surrounding circumstances existing when the contract is entered into, such as the situation of the parties, and of the subject-matter of the contract."

In *Field* v. *Munson* (47 N. Y. 221) it was held, viz.: " Where a

contract as evidenced by the writings between the parties is not entirely intelligible, evidence of the situation and relation of the parties toward each other, and of the circumstances attending the negotiation, is competent, as aids in the interpretation of the written instrument."

In *Kenyon* v. *K. T. & M. M. A. Assn.* (122 N. Y. 258) BRADLEY, J., said : ". But inasmuch as the words taken together, of his statement upon the subject expressed in the application, are in their import somewhat equivocal, reference may be had to the light furnished by the surrounding circumstances, with a view to ascertain the sense in which they were used, so far as it may be applicable to them, and in aid of their interpretation."

In *Farr* v. *Nichols* (132 N. Y. 327), which was an action to foreclose a mortgage, it was held : " That as between the parties it was proper to show the circumstances to aid in ascertaining the intent of the parties, and viewed in their light, the intent appeared to be to cover future as well as existing indorsements."

In *Emmett* v. *Penoyer* (151 N. Y. 567) O'BRIEN, J., said : " Where the paper appears to be incomplete in any respect, or where words or phrases used, in their application to the agreement of which they form a part, are ambiguous or unintelligible, parol proof is admissible to supply the incomplete term, to aid in the interpretation and to explain what is obscure or doubtful."

In the 6th finding of fact the referee says : " Parol evidence was admitted and received upon the trial of this action for the purpose of determining whether or not the conditions of said mortgage had been complied with, and also for the purpose of determining the intent and meaning of the terms and conditions expressed therein, and was not admissible and is not considered for the purpose of in any way varying the terms and conditions thereof."

We think the finding indicates a proper rule, and that the appellants are not entitled to disturb the referee's report by reason of the application of that rule in the progress of the hearing before the referee.

The language found in the mortgage is equivalent to a stipulation that John A. Lighthall should pay into the State Bank of Syracuse the sum of $5,000, and that when the bank so received it it should give credit therefor to the Farmers' Fertilizer Company, and that

until such payment should be made by him the mortgage should stand as a security to the bank for the sum of $5,000 so to be paid by John A. Lighthall on or before the 1st of June, 1896. And it evidently was the intent of the parties that when said $5,000 was paid it should be applied on the indebtedness held by the plaintiff against the Farmers' Fertilizer Company.

The evidence warranted the referee in finding that John A. Lighthall failed to comply with the conditions of the mortgage and that he had omitted to pay to the plaintiff to the credit of the Farmers' Fertilizer Company the sum of $5,000. The evidence fully sustains the finding of the referee, that in January, 1896, the Farmers' Fertilizer Company was indebted to the plaintiff in about the sum of $37,000. The payment on January 6, 1896, by Frederick S. Lighthall of $5,000 to his father, John A. Lighthall, for 600 shares of the stock of the Farmers' Fertilizer Company, was antecedent to the execution of the mortgage and has no connection with the money mentioned in the mortgage.

Considering the language used in the mortgage in the light of the situation of the parties at the time it was executed, and the circumstances that aid in its interpretation, we are of the opinion that the learned referee correctly found, viz. : " That the true intent and meaning of the language used and employed in said mortgage as understood by the parties at the time of its execution, was that the sum of $5,000, secured by said mortgage, should be paid to the plaintiff to the credit of the Farmers' Fertilizer Company, and that plaintiff would thereupon be entitled to apply said moneys so deposited by said John A. Lighthall towards the payment and reduction of its claims and demands against said Farmers' Fertilizer Company."

We think the evidence warranted the finding by the referee that the several sums of money deposited to the credit of the Farmers' Fertilizer Company with the plaintiff and used by the Farmers' Fertilizer Company in the discharge of its pressing needs, had no reference to the sum stipulated for in the mortgage, and that the referee was warranted in his general conclusion, upon the facts, that the mortgage had never been paid, or its terms complied with, and that the same was a valid security in the hands of the plaintiff, and that the plaintiff was authorized to have the same foreclosed by a

sale of the mortgaged premises, and the proceeds of such sale " applied towards the payment of the debt of the Farmers' Fertilizer Company to plaintiff."

The foregoing views lead to the conclusion that the report of the referee should be sustained and the judgment entered thereon should be affirmed.

All concurred.

Judgment affirmed, with costs.