99 N.E.2d 474 (1951)
155 Ohio St. 482
SECOND NATIONAL BANK OF WARREN
v.
BOYLE et al.
No. 32512.
Supreme Court of Ohio.
May 31, 1951.
*476 Hoppe, Day & Ford, Warren for appellant.
Paul E. Kightlinger, Theodore R. Saker, Warren, Herbert S. Duffy, Atty. Gen., Foster J. Fludine, Canton, Don C. Miller and John S. Mudri, Cleveland, for appellees.
TAFT, Judge.
The question to be determined is whether the indebtedness, originally evidenced by the 1948 note of the mortgagor to the bank, is secured by the 1946 mortgage of the mortgagor to the bank.
It is argued that, because the 1946 mortgage did not obligate the bank to make the 1948 loan to the mortgagor, the 1946 mortgage could not secure the indebtedness evidenced by the 1948 note. Kuhn v. Southern Ohio Loan & Trust Co., 101 Ohio St. 34, 126 N.E. 820, is cited as supporting that conclusion. That case does hold that a mortgage duly recorded "given for definite future advances, which the mortgagee is obligated to make" does secure such advances. However, because the question was not before the court, that case does not hold that future advances could not be secured by a duly recorded mortgage if the mortgagee was not obligated to make the advances.
It is contended that some of the language of Read, J., in the court's opinion in Spader v. Lawler, 17 Ohio 371, requires the conclusion that a mortgage cannot secure future advances which the mortgagee is not obligated to make. The difficulty with that contention is that Judge Read, in his opinion, admitted that it was not necessary in that case to reach such a conclusion. The other judges, who concurred with him in the judgment of the court, expressly avoided such a conclusion. The holding in that case was that a mortgage with a clause to secure future advances would be postponed to a second mortgage recorded before the future advances were made. In the instant case, the indebtedness, evidenced by the 1948 note, was incurred before either the judgment creditor, the state, or the United States secured any lien against the real estate described in the 1946 mortgage.
This court has held that a mortgage to secure future advances, which the mortgagee is not obligated to make, is valid, and that the liens under the mortgage for such advances are entitled to priority over a judgment lien which attaches after such advances are made. Kramer v. Trustees of Farmers' & Mechanics' Bank, 15 Ohio 253. See Choteau, Merle & Sandford v. Thompson & Campbell, 2 Ohio St. 114; West v. Klotz, 37 Ohio St. 420, 427. This holding apparently accords with the great weight of authority outside Ohio. See annotations, 1 A.L.R. 1586, 81 A.L.R. 631, and 172 A.L.R. 1079.
Obviously, where there is no obligation to make future advances, a mortgage, purporting to secure such future advances, cannot secure such advances until the advances have been made. Until then, so far as such advances are concerned, there is nothing for the mortgage to secure; and the provisions of such a mortgage merely represent an expression of the intention of the mortgagor and mortgagee that the mortgage shall operate as a security for the obligations of the mortgagor with respect to such advances, if and when such obligations arise. At most, those provisions represent an offer by the mortgagor to provide the security of the mortgage for such advances if and when they are made. Cf. Bretz v. Union Central Life Ins. Co., 134 Ohio St. 171, 16 N.E.2d 272. If such offer is accepted by the mortgagee in making a subsequent advance, then the necessity of executing and recording a new mortgage to secure such advance may be avoided. Cf. Choteau, Merle & Sandford v. Thompson & Campbell, supra. The making of a loan to the mortgagor, in reliance upon that offer, may, in and of itself, indicate an acceptance of that offer. Cf. Powers & Weightman v. Bumcratz, 12 Ohio St. 273; Wise v. Miller, 45 Ohio St. 388, 14 N.E. 218.
As stated in another way by Hitchcock, J., in the court's opinion 15 Ohio St. at *477 page 260 in Kramer v. Trustees of Farmers' & Mechanics' Bank, supra:
"If Doyle had not indorsed the paper, or made himself security for Wells, Henry & Co., the mortgage would have been void for want of consideration, or, in other words, it would not have operated as an indemnity, for there would have been nothing against him for which any indemnity could have been required. It is true, too, that Doyle was under no legal obligation to indorse; but when he did indorse, and thereby made himself liable for Wells, Henry & Co., as was contemplated when the mortgage was executed. I do not perceive with what propriety it can be said there was no consideration."
This raises the question, in the instant case, as to whether the bank, by what it did and said before and at the time of the 1948 loan, expressed an intention that that loan was to operate as an acceptance of the 1946 offer by the mortgagor that the 1946 mortgage should secure indebtedness thereafter incurred by the mortgagor to the bank. Unless the bank did express such an intention, the action of the bank, in making the 1948 loan, would not represent the manifestation of assent to the mortgagor's offer which would be essential to the existence of a contractual obligation to secure the 1948 loan by the 1946 mortgage. See Dayton, Watervleit Valley & Xenia Turnpike Co. v. Coy, 13 Ohio St. 84, 94; Restatement of the Law of Contracts, Section 55, Comment a; 1 Williston on Contracts (Rev.Ed.), 42, 43 § 22; 190 § 66; 191 § 67; 192, 193 § 67A.
The 1948 indebtedness was originally evidenced by a written instrument, executed by Rita R. Boyle, d. b. a. Red Top Cab, and delivered by her to and accepted by the bank. The first portion of this instrument is in the usual form of a promissory note. There is a provision for acceleration on account of nonpayment of any installment, a provision authorizing a cognovit judgment and a provision for the interest rate after maturity. The instrument then provides:
"To secure the payment of the above note we hereby sell or convey to the Second National Bank of Warren, successors and assigns, the following described personal property, to wit:
"Secured by 10 Kaiser sedans and 1 1947 Desota, and 2 1946 Plymouths and 5 1947 Plymouths described on schedule attached.
"(Full amount of note to be recorded on each title.)
"* * * If the holder hereof shall, at any time before said note is fully paid, deem it necessary for its more complete protection, it shall have the right to take possession of the above described property and sell the same at the expiration of 10 days' written notice to us, whether at public or private sale, without advertising the same. In case of public sale the holder hereof may purchase said property and account for the proceeds of such sale, after deducting the amount due it and the costs of selling said property.
"We agree to keep said property at all times in good condition and repair and to keep the same insured against loss by fire, collision and theft for such amounts as the holder hereof may specify, for the benefit of the holder hereof.
"If the note secured by this mortgage is fully paid then this transfer shall be void; otherwise to remain in full force and effect." (Emphasis added.)
There is nothing on the face of the instrument to indicate that anything other than the vehicles described therein was to be security for the indebtedness evidenced thereby. The description therein of the note, as "the note secured by this mortgage," when coupled with the absence of any reference to other security, tends to negative any suggestion that the indebtedness, evidenced by the note, was additionally secured.
All the provisions of the instrument are a printed form of the bank, except the date, the amount, the due date and amount of installments, the signature of the mortgagor, and the description of the collateral.
The provisions of the note and chattel mortgage, evidencing the 1948 loan, do not indicate any connection between the 1946 mortgage and the 1948 loan. Apart from the existence of the mortgage and its provisions, there is no evidence from which *478 any such connection could even be inferred. While "Rita R. Boyle, d. b. a. Red Top Cab," who signed the note and chattel mortgage evidencing the 1948 loan, is the same person as "Rita R. Boyle," who signed the 1946 mortgage, the fact, that the bank was satisfied to have her sign the 1948 note in a manner different from that in which she signed the 1946 mortgage, does tend to indicate that neither the bank nor the mortgagor recognized any connection between the 1948 note and the 1946 mortgage.
Furthermore, there is not even any allegation by the bank in its pleadings that the loan of 1948 was made either in reliance upon or on the faith of the 1946 mortgage. Apart from the existence and provisions of the mortgage, nothing in the pleadings indicates that the 1946 mortgage was even a factor in influencing the bank to make the 1948 loan.
It is apparent therefore that, at least so far as the 1948 indebtedness is concerned, the bank has not alleged in its pleadings an acceptance of the mortgagor's offer to secure the future obligations of the mortgagor to the bank under the terms of that mortgage. We suppose that no such allegation was made because it could not have been supported by the evidence. That supposition is confirmed by the facts hereinbefore referred to, tending to negative any expressed intention on the part of the bank to accept that offer of the mortgagor.
This differentiates the instant case from the Kramer case. Thus it is disclosed in the report of the Kramer case, 15 Ohio at page 256, that the mortgagee there involved alleged reliance upon the mortgage indemnity in continuing to indorse paper of the mortgagor. In that report, at page 258, it appears that there was a finding that the mortgagee did so rely.
A number of the cases, holding that a mortgage may secure future advances which the mortgagee is not obligated to make, apparently recognize that such future advances must be made in reliance upon or on the faith of the mortgage. Ackerman v. Hunsicker, 85 N.Y. 43, 39 Am. Rep. 621 ("made upon the faith thereof"); Hopkinson v. Rolt, 9 House of Lords Cases, 514, 554; Shirras v. Caig, 7 Cranch 34, 51, 3 L.Ed. 260, 266 ("contracted upon its faith"); Farr v. Nichols, 132 N.Y. 327, 330, 30 N.E. 834, 835 ("make * * * upon the faith of his mortgage security"); Jarratt v. McDaniel, 32 Ark. 598, 603 ("advances * * * upon the faith of the mortgage"); Lovelace v. Webb, 62 Ala. 271, 281 ("on the faith of which and the security of the mortgage, the creditor makes advances"); and Buck Co. v. Buck, 162 Cal. 300, 122 P. 466, 468 ("made * * * advances * * * upon the faith of the mortgage security"). Cf. Powers & Weightman v. Bumcratz, supra, paragraph one of the syllabus ("when acted on") and 12 Ohio St. page 274 ("sales * * * made * * * in faith of the guarantee"); Wise v. Miller, supra, paragraph three of the syllabus ("made on the faith of"). Most of the cases, where the question might have been raised, are silent as to the necessity of such reliance in making a future advance. However, we have found no cases holding that such reliance, in making a future advance, is not necessary if the lien of the mortgage is to secure such an advance.
Judgment affirmed.
WEYGANDT, C. J., and ZIMMEMAN, MIDDLETON and MATTHIAS, JJ., concur.
STEWART and HART, JJ., concur in paragraph one of the syllabus, but dissent from the judgment.
STEWART, Judge.
I concur in paragraph one of the syllabus but dissent from the judgment on authority of Kramer v. Trustees of Farmers' & Mechanics' Bank, 15 Ohio 253. I am of the opinion that the Kramer case is in accord with the overwhelming weight of authority. 1 A.L.R. 1586; 81 A.L.R. 631; 172 A.L.R. 1079.
HART, Judge, concurs in the foregoing dissenting opinion.