Chief Judge Cooke
(dissenting). The majority today disregards the Legislature’s express provision of different standards governing unemployment eligibility for professional and nonprofessional public school employees. Because of this strained reading of section 590 of the Labor Law, I must dissent.
The issue in these cases concerns the eligibility of nonprofessional public school employees who are members of collective bargaining units for unemployment benefits during the summer recesses. The statute provides that such an employee, who is usually paid on an hourly basis, should be disqualified only when as a member of a collective bargaining unit he has a written contract for continued employment in the fall. The majority, however, applies the broader grounds of disqualification applicable to professional employees, who are generally employed through annual contracts that frequently take into account the summer recess. In so doing, the majority wipes away the requirement of a collective bargaining contract and allows revocable offers and assurances that do not rise to the status even of individual contracts to suffice.
Subdivision 11 of section 590 establishes two distinct categories of nonprofessional employees — those who are members of collective bargaining units and those who are not. Those who are members are ineligible for unemployment benefits "provided the claimant as a member of a collective bargaining unit has a written contract which continues his services in such capacity” after the summer recess (emphasis added). An employee who is not a member is ineligible if he or she has "an individual contract to perform services” after the recess. The majority correctly recognizes that the claimants here fall into the first category. But it errs in finding that to require a collective bargaining contract to disqualify employees in the first category places "unwarranted emphasis” on the statutory language. To require a collective bargaining agreement does no more than recognize the distinction drawn by the Legislature and accord the language its plain meaning. This is especially so because the second part of the subdivision speaks of "individual contracts” for nonmembers but makes no such reference regarding members of collective bargaining units. "When different terms are used in various parts of a statute or rule, it is reasonable to assume that a distinction between *334 them is intended” (Matter of Albano v Kirby, 36 NY2d 526, 530).
There is an important reason to require a collective bargaining, rather than an individual, contract to disqualify members of collective bargaining units from unemployment benefits. When members of a bargaining unit select appropriate bargaining representatives those agents "shall be the exclusive representatives of all the employees in the appropriate unit for the purposes of collective bargaining” (Labor Law, § 705, subd 1). Public employees, under the Taylor Law, have the right to collectively bargain through representatives, and it is improper practice for an employer to interfere with this representation (Civil Service Law, §§ 202, 203, 208, 209-a). Thus, there can be no individual contracts between an employer and members of a collective bargaining unit. The majority disregards this fundamental principle.
Even if subdivision 11 could be read as allowing contracts other than the collective bargaining unit’s agreement, however, there would be no such contracts here. The majority finds it reasonable for the Unemployment Insurance Appeal Board to have constructed some form of "contract” out of two factors. When each of its two components is scrutinized, however, this "contract” evaporates. First, the board relied upon the "Triborough Doctrine”, which has been formulated by the Public Employment Relations Board (Matter of Triborough Bridge & Tunnel Auth. [Dist. Council 37 & Local 1396], 5 PERB 3064). The doctrine prevents an employer from unilaterally changing terms or conditions of employment that are mandatory subjects of bargaining when a bargaining agreement has expired and a new one is still being negotiated (see Matter of Board of Coop. Educational Servs. of Rockland County v New York State Public Employment Relations Bd., 41 NY2d 753). The majority reasons that if an employee individually reached agreement to work in the fall, the Triborough Doctrine could be used to define the terms of the employment and thus create a contract. The flaw with this reasoning, however, is that it would permit an employer to in effect negotiate separately with an individual employee and reach an individual "contract” that touched even on subjects of mandatory bargaining. This would run roughshod over the principle that the bargaining representative is the exclusive bargaining agent for the unit. If employers can negotiate with individual members, there is no "collective” bargaining. A *335 second flaw with this reasoning is that in at least some of the cases here there was no binding obligation by the school district to rehire the employee: In one case the claimant never responded to the district’s letter. In a second the response was arguably conditional, and in a third the union has alleged that the acceptances were coerced. Absent such acceptance, the offers of continued employment were revocable and not binding (Rubin v Dairymen’s League Co-op. Assn., 284 NY 32; Petterson v Pattberg, 248 NY 86).
Considering these impediments to finding the existence of a contract here, it is not surprising that the majority concludes that "a reasonable expectation of employment will serve” to bar claimants (p 331). What the majority in effect does is read the more liberal disqualification standards for professional employees, contained in subdivision 10 (of section 590), into subdivision 11.
Subdivision 10 makes professional employees ineligible for summer unemployment compensation if they have either a "contract” or a "reasonable assurance” of continued employment for the following fall. Subdivision 11, in stark contrast, does not contain the alternative of a "reasonable assurance,” showing that the Legislature intended to distinguish teachers and other professional employees from nonprofessionals.
The alternative "reasonable assurance” was added to subdivision 10 by the Legislature in 1977, at the same time that it created subdivision 11. The majority argues that the different wording of the two sections has no significance because the Legislature was simply adopting changes required by Congress as a condition for continued Federal reimbursement. This argument misses the point. Congress amended the Federal statute (US Code, tit 26, § 3304, subd [a], par [6], cl [A], subcls [i], [ii]) in 1976 to require that States provide that "compensation shall hot be payable” to professional employees "if there is a contract or reasonable assurance” of continued employment (emphasis added). For nonprofessional employees, the Federal amendment said only that States could provide that "compensation * * * may be denied to any individual” who has a reasonable assurance of employment in the fall (emphasis added). The House Conference Report makes clear that this distinction was a conscious one (H Rep No. 94-1745).
Thus, Congress gave the Legislature no choice but to adopt legislation denying compensation to professional employees who had a reasonable assurance of continued work. It gave *336 the States a choice as to whether to deny compensation to nonprofessionals who had only a reasonable assurance of reemployment, however, and this State’s Legislature opted not to deny compensation to these workers. The distinction drawn by Congress and the Legislature between a "contract” and a "reasonable assurance” is thus a lucid and conscious one. To conflate the two terms guts the legislation of its plain meaning.
In support of its position, the majority cites several cases that loosely interpreted the "contract” requirement. to bar school employees from recovering unemployment compensation. These cases dealt with professional employees, however, not nonprofessionals. At the time of these cases, neither the Federal statute nor this State’s Labor Law excluded nonprofessionals from receiving benefits over the summer, regardless of whether they had a contract for renewed employment in the fall. Indeed, in Robinson v Administrator, Dept. of Employment Security (356 So 2d 477 [La]), the court noted this different treatment and found that "the different functions and characteristics between teachers and other employees of the school system” provided a rational basis for excluding teachers from summer unemployment compensation when they had guarantees of continued employment while allowing nonprofessional employees to receive compensation even though they had formal contracts (id., at p 482). If there was a rational basis for this sharp difference in treatment prior to the 1976 Federal amendments, there is certainly a basis for the slight distinction made under current law.
The majority also bases its decision in part on deference to the unemployment appeal board’s interpretation of the term "contract” in subdivision 11. This determination should carry no weight. Where "the question is one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent, there is little basis to rely on any special competence or expertise of the administrative agency” (Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459).
There thus is- nothing to support the majority’s finding of a contract or its reading of "contract” and "reasonable assurance” — two distinct concepts — as meaning the same thing. This interpretation wipes out the different treatment that the Legislature established for professional and nonprofessional school employees regarding eligibility for unemployment compensation, in effect merging subdivisions 10 and 11 of section *337 590 of the Labor Law. Only the Legislature should undertake such action.
The orders of the Appellate Division should be reversed.
Judges Jasen, Gabrielli, Wachtler, Fuchsberg and Meyer concur with Judge Jones; Chief Judge Cooke dissents and votes to reverse in a separate opinion.
In each case: Order affirmed, with costs.